UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NICOLE ANNA JORDAN,

    Plaintiff,

v.

Case No: 2:17-cv-64-FtM-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff Nicole Anna Jordan seeks judicial review of the denial of her claim for a period of disability and disability insurance benefits ("DIB") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed the record, the briefs and the applicable law. For the reasons discussed herein, the decision of the Commissioner is **AFFIRMED**.[1]

### I.    Issues on Appeal[2]

Plaintiff raises three issues on appeal: (1) whether the Administrative Law Judge ("ALJ") properly evaluated the severity of Plaintiff's physical impairments at step two and considered them in assessing Plaintiff's ability to work; (2) whether the ALJ properly evaluated the opinions of the consultative and treating physicians in

---

[1] Both parties have consented to the jurisdiction of the United States Magistrate Judge. Docs. 15,17.

[2] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

determining Plaintiff's residual functional capacity ("RFC"); and (3) whether substantial evidence supports the ALJ's determination at step five.

## II. Summary of the ALJ's Decision

Plaintiff, a high school graduate and age 38 at the time of the decision, filed her application for DIB on May 9, 2012, alleging her disability began September 28, 2010 due to Graves' disease, brain anomaly, severe anxiety, depression, rapid pulse and high blood pressure. Tr. 83, 151, 249-57, 404. Plaintiff's claim was denied initially on October 23, 2012. Tr. 158-63. Plaintiff requested and received a hearing before ALJ Gregory Hamel on February 12, 2015. Tr. 60, 92-131. Plaintiff, who was represented by counsel, and vocational expert ("VE") Dawn Bergren testified by video-teleconference. Tr. 92-131. On August 10, 2015, the ALJ issued a decision finding Plaintiff not disabled from September 28, 2010 through December 31, 2014, the date last insured. Tr. 64-85. In his decision, at step two of the sequential process,[3] the ALJ found that Plaintiff had the severe impairments of major depressive disorder, anxiety disorder and panic disorder without agoraphobia. Tr. 68. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listing. Tr. 68-70. Prior to step four, the ALJ then determined that during the relevant period Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> [Plaintiff] has been able to carry out only routine and repetitive tasks that do not require more than occasional public contact or more than

---

[3] The sequential evaluation process is described in the ALJ's decision. Tr. 66-67.

occasional interactions with co-workers. [Plaintiff] can carry out these
functions consistently over the course of the work day and work week.

Tr. 74. Next, at step four, the ALJ found that Plaintiff is unable to perform her past relevant work as a claims adjuster or teacher's aide, because these occupations are skilled and semi-skilled and exceed Plaintiff's RFC, which limits her to the performance of routine and repetitive tasks. Tr. 83. Relying on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of unskilled representative occupations such as automobile cleaner, floor worker, housekeeper and small parts assembler. Tr. 84. As a result, he found Plaintiff was not disabled. Tr. 85.

III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal citations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).[4] Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v.*

---

[4] After the ALJ issued the decision, certain Social Security rulings and regulations were amended, such as the regulations concerning the evaluation of medical opinions and evaluation of mental impairments. *See e.g.*, 20 C.F.R. §§ 404.1520a, 404.1520c, 404.1527 (effective March 27, 2017); SSR 16-3p, 2016 WL 1119029 (March 16, 2016). The Court will apply rules and regulations in effect at the time of the ALJ's decision. *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 (11th Cir. 2018); *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988); 20 C.F.R. § 404.1527 (effective March 27, 2017) ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

*Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citation omitted). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact or found that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991); *cf. Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the factual findings). The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## IV. Discussion

### A. Severity of Plaintiff's physical impairments

Plaintiff first argues the ALJ erred by determining Plaintiff's alleged physical impairments – specifically, Graves' disease, eye symptoms and headaches – were not severe impairments, and he failed to consider the combined effects of Plaintiff's alleged physical impairments along with her mental impairments in determining Plaintiff's RFC. Doc. 21 at 15-19. The Commissioner responds substantial evidence supports the ALJ's finding that Plaintiff physical impairments are not

severe, and the ALJ considered these impairments when assessing Plaintiff's RFC. *Id.* at 19-21.

The ALJ discussed in detail Plaintiff's treatment for her physical impairments, beginning with her treatment for papillary thyroid carcinoma, for which she underwent a total thyroidectomy in November 2005. Tr. 68. The ALJ stated there was no recurrence of the cancer, and medical tests and records from soon after the surgery and October 2014, January 2015 and February 2015 showed Plaintiff was completely asymptomatic. Tr. 68-69, 493-94, 603, 696-97, 714. Plaintiff's examinations in late 2014 and early 2015 showed Plaintiff was in no distress and had no joint tenderness or swelling. Tr. 696-97. She had no complaints of pain, mylalgias or arthralgias, no headaches or bone pain, and no visual disturbance. Tr. 68, 696-97. The ALJ further discussed Plaintiff's earlier medical records for treatment of Graves' disease and headaches:

> Earlier medical reports describe treatment for Graves' disease (with ophthalmopathy noted on CT imaging). Records from the Endocrine Group show that Ms. Jordan reported less severe symptoms related to thyroid disease in February 2007, where earlier reports showed some palpitations and fatigue (Exhibits 2F and 3F). Mark Yacono, M.D., treating physician, noted that the condition occasionally affected daily activities but did not affect quality of sleep (Exhibit 1F). A thyroid ultrasound showed no residual mass in October 2007 (Exhibit 2F. page 18), and a more recent study in October 2014 likewise revealed no nodule or suspicious mass (Exhibit 17F).
>
> It is noteworthy that at the time she was actively treated for the thyroid disease Ms. Jordan was regularly employed. Moreover, Dr. Yacono alluded to no ongoing and significant vocationally relevant limitations associated with thyroid or Graves' disease, although Ms. Jordan has used Synthroid (a dosage of 125 mg. is shown in an October 2007 report) (Exhibit 1F/7). An MRI in May 2005 showed no acute intracranial abnormality, although there was a prominent cortical vein seen representing a development venous anomaly (Exhibit 3F, page 1).

> Ms. Jordan complained of headache and neck pain in 2007, and the possibility of migraine headaches was raised (Exhibit 3F, pages 13-15). An MRI of the brain in February 2007 showed no acute abnormality, with sinusitis observed on the right side (Exhibit 3F). A CT scan of the head conducted in February 2015, shortly after the insured status expired, likewise revealed no abnormality (Exhibit 27F). In 2007 the claimant was also treated for pleuritic chest pain with pneumonia (Exhibit 3F, page 22). However, there has been no recurrent issues related to this problem or of any reported work restrictions.

Tr. 68-69. After further discussion of Plaintiff's treatment for other medical ailments not at issue here, the ALJ discussed the consultative examination of Joseph Prezio, M.D., who opined in October 2012 that Plaintiff had no physical limitations or restrictions.[5] Tr. 69. Summarizing his reasoning for not finding Plaintiff's alleged physical limitations to be severe and citing to extensive support in the record, the ALJ concluded:

> Following the birth of [Plaintiff's] third child in March 2010, the physical conditions noted above did not cause her to be unable to continue working. By contrast, the medical record shows only an intermittent need for treatment, and there is nothing in the medical reports to show that [Plaintiff] stopped work in September due to any specific physical illness. . . . Moreover, it appears that [Plaintiff] received unemployment benefits through at least the fourth quarter of 2012 (Exhibit 7D). While not conclusive on the issue to be determined, this does tend to suggest that Ms. Jordan considered herself able to do some level of work . . . .
>
> In sum, the need for treatment has been sporadic since September 2010, and overall clinical findings on examinations performed by multiple independent medical sources show few clinical findings showing significant functional deficit. Despite allegations of severe complaints, the evidence does not support severe symptoms or functional limitation enduring 12 months despite intermittent need for treatment (Exhibits 16F, page 4; 30F, pages 12, 107, 109-110). Rather clinical findings, including those established after the October 2012 consultative examination, show few or no deficits in musculoskeletal, pulmonary and

---

[5] This opinion will be discussed in greater detail, *infra*.

neurological functioning and stable hypertension with compliant use of medication. (footnote/citations omitted).

Tr. 70.

The Court finds the ALJ properly evaluated Plaintiff's alleged physical impairments at step two and articulated adequate reasons for finding them to be not severe. "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986). Accordingly, "the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

Contrary to Plaintiff's assertion, the ALJ considered Plaintiff's physical conditions and found they did not cause more than a minimal limitation on her ability to work. Tr. 68-70. At the time Plaintiff was undergoing treatment for her thyroid cancer, she still was working. Tr. 68-69. As late as 2012, she was collecting unemployment benefits.[6] Tr. 70. Most recent diagnostic tests in late 2014 and

---

[6] The Court finds this fact further supports the ALJ's rationale for finding Plaintiff's physical conditions to be not severe. The Eleventh Circuit and courts in this district repeatedly have held that a claimant's receipt of unemployment benefits properly is considered, among other factors, when determining whether she is capable of working. *See, e.g.*, *Ricker v. Comm'r of Soc. Sec.*, No. 5:13-cv-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014) ("Courts in the Eleventh Circuit, in addition to several circuit courts, have found a claimant's receipt of unemployment benefits inconsistent with a claim of disability during the same period.") (citing cases); *see also Butler v. Comm'r of Soc. Sec.*, No. 3:11-cv-110-J-MCR, 2012 WL 628489, at *7 (M.D. Fla. Feb. 27, 2012) ("Plaintiff's allegations of total disability are inconsistent with his receipt of unemployment benefits where he held himself out as being able to work.").

early 2015 showed Plaintiff was completely asymptomatic for the recurrence of her cancer or any suspicious mass, and she had no headaches or visual disturbances. Tr. 68, 576, 603, 696-97, 714. As noted by the Commissioner and contrary to Plaintiff's assertion, the ALJ discussed Plaintiff's complaints of headaches, but diagnostic tests and treatment records revealed no abnormalities, and Plaintiff appeared to be responding to medication. Doc. 21 at 17-18, 20; *see* Tr. 68-69, 75, 77-78, 494, 714.

Moreover, the Eleventh Circuit has held, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Accordingly, even if the ALJ here erred by finding Plaintiff's certain impairments were non-severe, that was harmless because the ALJ found Plaintiff has several severe impairments, and "that finding is all that step two requires." *Id.* at 825; *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two."). Thus, the Court finds the ALJ properly evaluated Plaintiff's alleged impairments at step two.

### B. Consultative and treating physician opinions

Plaintiff next challenges the weight the ALJ gave to the opinion of Dr. Prezio, who, as noted, performed an internal medical examination of Plaintiff in October 2012. Tr. 571-74. Dr. Prezio first discussed Plaintiff's history of Graves' disease and hyperthyroidism, which was treated surgically in 2005 with almost a complete thyroidectomy, after which she was placed on a thyroid hormone that required

further regulation. Tr. 571. He also discussed her history of anxiety, depression and bipolar issues, which went back a number of years. *Id.* She had a history of high blood pressure since 2010, which he noted was under control, and migraines subject to light and noise, which he noted also were controlled without too much difficulty. *Id.* Plaintiff was told she had a brain anomaly, and accordingly was advised to have scans done about once every three years to keep it under observation. *Id.*[7] Dr. Prezio reported Plaintiff had orbital decompression bilaterally in 2006 to cosmetically improve her eye situation. *Id.* He noted Plaintiff at the time was smoking one pack of cigarettes per day. Tr. 572.

Dr. Prezio observed Plaintiff appeared to be in no acute distress, she had bulging eyes bilaterally consistent with Graves' exophthalmopathy with no residual weakness, her sclera were not yellow and her conjunctivae were clear, her pupils were equal, round and reactive to light and accommodation, her extraocular muscles were intact, and her fundi were normal. Tr. 572-73. His examination further revealed Plaintiff had no musculoskeletal or neurologic deficits, her strength and dexterity were intact, and her gait was normal. *Id.* As to her physical impairments, Dr. Prezio diagnosed Plaintiff with Graves' exophthalmopathy with associated hyperthyroidism "all successfully treated and now on thyroid replacement," and migraines and thyroid cancer by history. Tr. 574. As to Plaintiff's mental

---

[7] Records from 2005 showed Plaintiff had a prominent cortical vein within her left frontal lobe, which testing revealed "may represent a developmental venous anomaly." Tr. 479. Further MRI testing and records over the years in 2007, 2010, 2011 and 2015 revealed Plaintiff was asymptomatic, and this condition did not change during that time period. Tr. 494, 714, 733, 735-36, 793, 799, 817. The ALJ discussed this issue in his opinion. Tr. 69.

impairments, Dr. Prezio diagnosed anxiety, depression and bipolar issues by history. *Id.* He reported Plaintiff's prognosis as stable and concluded, "[b]ased on the current physical examination, [Plaintiff] does not appear to have any significant physical limitations or restrictions noted at the present time." *Id.*

The ALJ gave Dr. Prezio's opinion great weight as to the physician's assessment of Plaintiff's physical limitations and their impact on her ability to carry out exertional, manipulative, environmental and postural activities. Tr. 69. Plaintiff takes issue with the ALJ's assessment, complaining that Dr. Prezio did not have the benefit of reviewing "any of the records of [Plaintiff's] complex medical treatment history, or laboratory and imaging findings." Doc. 21 at 22. She also asserts the ALJ mischaracterizes the evidence by summarizing areas of Dr. Prezio's report that highlight "insignificant" findings unrelated to Plaintiff's alleged disabling conditions, such as her normal gait and stance and her ability to move around, and used those statements as a basis to deny her claim. *Id.* at 23. Plaintiff's argument is without merit.

In evaluating the medical opinions of record, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); *Winschel*, 631 F.3d at 1178-79. When determining how much weight to afford an opinion, the ALJ considers whether

there is an examining or treatment relationship and the nature and extent thereof; whether the source offers relevant medical evidence to support the opinion; consistency with the record as a whole; the specialization of the source, if any; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

First, as noted, Dr. Prezio's report included the history of her Graves' disease, and related issues, and accurately reported it was successfully treated and that her migraines were controlled without too much difficulty. Tr. 571, 574. These facts are supported by the record. Based on his examination, Dr. Prezio reported that while Plaintiff does get fatigued easily and has anxiety and some back pain, she is able to cook, clean, do laundry and shop. Tr. 572. Furthermore, her eye examination was normal, and she reported she was in no acute distress. Tr. 572-73. The ALJ gave great weight to this report as to Plaintiff's ability to carry out her physical work activities, and substantial evidence supports this determination. Tr. 69.

Second, contrary to Plaintiff's assertion, Dr. Prezio's report is not inconsistent with the other medical records from treating physicians, Richard Lavigne, M.D., Neil Berger, Ph.D., or social worker Alison Lavigne. Doc. 21 at 23-24. Under the regulations, opinions of treating sources usually are given more weight because treating physicians are the most likely to be able to offer detailed opinions of the claimant's impairments as they progressed over time and "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §

404.1527(c)(2). Medical source opinions may be discounted, however, when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole. SSR 96-2p; *Crawford v. Comm'r*, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Accordingly, "[a]n ALJ must give a treating physician's opinion substantial weight, unless good cause is shown." *Castle v. Colvin*, 557 F. App'x 849, 854 (11th Cir. 2014) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Sabo v. Chater*, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996). "Good cause exists when the '(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

Dr. Lavigne was Plaintiff's treating physician from approximately 2007 to 2015. *See generally* Tr. 733-913. Although in her statement of facts Plaintiff summarizes Dr. Lavigne's treatment history from 2009 through 2012, in her argument on this issue Plaintiff cites only to a single visit to Dr. Lavigne on September 28, 2010, in which Plaintiff asserts Dr. Lavigne opined Plaintiff was "disabled" from hypothyroid on replacement and "unable to work." Doc. 21 at 4-8, 24 (citing Tr. 735). But a closer review of the record shows Dr. Lavigne simply was reporting Plaintiff's complaints, not stating his opinions as to her ability to work; and later visits show these issues improved. *Compare* Tr. 735 *with* Tr. 797.

In that particular visit in late 2010, Plaintiff reported feeling "miserable" with increased light sensitivity in her eyes. Tr. 735. A prior visit to Plaintiff's eye doctor

revealed her exophthalmos was slightly worse. *Id.* Plaintiff complained of headaches, and *she reported* she was unable to work. *Id.* Dr. Lavigne noted Plaintiff's history of a venous anomaly from an MRI of her brain, further noting a recent MRI compared to one three years earlier showed no change. Tr. 736. Dr. Lavigne opined that most of Plaintiff's symptoms were related either to anxiety or symptoms of excessive thyroid hormone. Tr. 736-37. He scheduled another MRI and blood work. Tr. 737.

Consistent with the opinion of Dr. Prezio, in an office visit in September 2012 – only one month before Dr. Prezio's examination – Dr. Lavigne reported Plaintiff had no symptoms of hyperthyroidism or hypothyroidism, her Xanax was helping her depression and anxiety, and she had no headaches or dizziness. Tr. 797. Although Dr. Lavigne also noted Plaintiff's bilateral proptosis and slight lid retraction in her eyes, he observed no irritation or obvious strabismus. Tr. 798. Plaintiff was kept on the same dosage of thyroid replacement medication, and she was given a prescription for Chantix to help her quit smoking. *Id.*

Plaintiff also complains that a portion of her psychiatric evaluation to which the ALJ gave limited weight, performed by Neil Berger, Ph.D. on September 10, also is inconsistent with the opinion of Dr. Prezio. Doc. 21 at 24; Tr. 544-48. The ALJ discussed Dr. Berger's evaluation, assigning it great weight in part and limited weight in part in assessing Plaintiff's RFC:

> Great weight is given to the assessment of Dr. Berger, especially insofar as he opined that Ms. Jordan can follow and understand simple directions and instructions and perform such tasks independently. He opined further that Ms. Jordan can maintain attention and concentration, maintain a regular schedule, learn new tasks, and make

> appropriate decisions. *However, less weight is afforded to his opinion that she can perform complex tasks independently. The evidence viewed as a whole does support a conclusion that Ms. Jordan does best when not confronted with more complex or complicated tasks. Dr. Berger opined further that Ms. Jordan cannot relate adequately with others or deal with stress due to fatigue and motivational issues. Only limited weight is given to these points, as the evidence viewed as a whole does support a conclusion that [Plaintiff] cannot function well in environments in which frequent contact with others would be required or in which only routine type of activity is involved.*

Tr. 82 (emphasis added). Thus, the ALJ found that Plaintiff could not perform complex tasks independently, and he appropriately limited Plaintiff's RFC to only routine and repetitive tasks that do not require more than occasional public contact or more than occasional interactions with co-workers. Tr. 74. Dr. Prezio did not opine on Plaintiff's mental ability; as noted, he only reported Plaintiff's history of depression and anxiety. Tr. 574. Accordingly, there is no merit to Plaintiff's argument on this point, and substantial evidence supports the weight given to Dr. Berger.

Finally, as further evidence of inconsistency with the opinion of Dr. Prezio, Plaintiff points to the opinions of two other treating sources, Aldith Lewis, D.O. and licensed social worker Alison Molea Lavigne, each of whom completed medical source opinions opining Plaintiff has severe symptoms of anxiety disorder causing her to be "off task" at least 15-25% of the workday. Doc. 21 at 24 (citing Tr. 713, 914). This argument also is without merit.

As an initial matter, the ALJ has the responsibility of assessing a claimant's RFC at the hearing level, and such "task of determining a claimant's RFC and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365

F. App'x 993, 999 (11th Cir. 2010). Therefore, "while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012). Moreover, as noted by the Commissioner, these opinions discuss only Plaintiff's alleged mental limitations that these individuals opined are caused by Plaintiff's depression and anxiety, and they do not address Plaintiff's alleged physical limitations. Doc. 21 at 27; Tr. 713, 914. On that basis alone they cannot be inconsistent with the opinion of Dr. Prezio, who performed a physical examination. Furthermore, the ALJ properly assigned little weight to these opinions, explaining they were inconsistent with and unsupported by the medical evidence of record. Tr. 79-81, 713, 914. Accordingly, the ALJ showed good cause for discounting the opinions. *Winschel,* 631 F.3d at 1179.

Finally, although Plaintiff refers to Ms. Lavigne as a "physician", she is a social worker and is not an acceptable medical source. Doc. 21 at 24; 20 C.F.R. § 404.1513(a)(1)-(5). Nonetheless, the ALJ discussed and properly weighed Ms. Lavigne's opinion in his decision, finding her opinion was unsupported by the record. Tr. 79. This was not in error. *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p; *Crawford.,* 363 F.3d at 1159-60. The ALJ "may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (citation omitted). Accordingly, the ALJ did not err in the weight given to Dr. Prezio or the other medical opinions.

### C. *Step 5 determination*

Next, Plaintiff argues substantial evidence does not support the ALJ's findings at step five. Doc. 21 at 30-34. Prior to and during the hearing before the ALJ,

Plaintiff's counsel objected that the VE was not qualified to testify as a VE. Tr. 84, 95, 433-36. Nonetheless, the ALJ proceed with the hearing and posed the following hypothetical to the VE:

> ALJ: Okay. All right. And Ms. Bergren, I'm going to ask you two, possibly three hypothetical questions. And as you respond to these questions please keep in mind, if you would, someone who is in her 30s, with a high school level education, and the type of work background such as you've just described. And in my first hypothetical question I would like you to please assume someone who has no significant exertional or postural or manipulative limitations, but is limited in a number of other ways as follows. I would like you to assume that this person is able to focus attention on tasks that are routine and repetitive in nature and by this I mean tasks that though they might sometimes include some level of detail or have several steps involved. They would not be complicated or complex or hard to remember. I'd like you to also assume that this hypothetical individual cannot do task[s] that require more than occasional public contact or interaction, either over the phone or in person, or more than occasional interactions with coworkers, meaning the coworkers might be present, but the person wouldn't have to do actual interaction with them on more than an occasional basis. Did you need me to repeat anything so far?
>
> VE: No.

Tr. 114-15. The VE testified this hypothetical person could not perform Plaintiff's past relevant work, but could perform four jobs: an auto cleaner with a SVP[8] of 1, a floor worker with a SVP of 2, a housekeeper with a SVP of 2 and a small parts assembler with a SVP of 2. Tr. 115-16. The VE stated his testimony is consistent with the Dictionary of Occupational Titles ("DOT"). Tr. 118.

---

[8] "The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00–4p, 2000 WL 1898704 at *3 (Dec. 4, 2000).

In his decision, the ALJ considered Plaintiff's objections to the VE's qualifications and overruled them because Plaintiff's counsel "offered no compelling reason why the [VE] was not qualified to give testimony and provided no evidence to refute the testimony." Tr. 84. The ALJ determined:

> Upon further questioning of the [VE] on the aforementioned issues by the ALJ, [the VE] provided satisfactory and accepted explanation for methodology used in determining numbers of jobs cited. The [VE] relied on information in the Occupational Employment Quarterly (OEQ) and the [VE's] firsthand experience with the jobs identified. In context of [the VE's] curriculum vitae, length of experience and firsthand experience with jobs identified by the [VE] in testimony, the undersigned is satisfied that the [VE] is qualified to give testimony.

*Id.* The ALJ relied on the VE's testimony and found Plaintiff could perform the positions of auto cleaner, floor worker, housekeeper and small parts assembler. Tr. 83-84.

Plaintiff argues she cannot work as an auto cleaner, housekeeper or assembler because the DOT specifies these jobs require reasoning levels exceeding her RFC to perform only "routine and repetitive tasks." Doc. 21 at 32-33. Thus, she asserts the VE's testimony that she could perform these jobs conflicts with the DOT, and the ALJ did not properly resolve the conflict between the VE's testimony and the DOT. *Id.* at 33-34. The Commissioner responds Plaintiff's RFC allows her to perform the four jobs identified by the VE, and the VE's testimony is consistent with the DOT. *Id.* at 35-37. Even if the ALJ erred, the Commissioner claims Plaintiff does not contest she could work as a floor worker, and thus the error was harmless. *Id.* at 37-38.

The Court finds substantial evidence supports the ALJ's findings at step five. Under SSR 00-4p, "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). If there is a conflict, the ALJ is to "obtain a reasonable explanation for the apparent conflict." *Id.* Here, the ALJ properly complied with SSR 00-4p by asking the VE whether her testimony conflicted with the DOT, and the VE responded her testimony did not. Tr. 84, 118; *see id.*

Even if any conflict exists between the VE's testimony and the DOT, the Eleventh Circuit has found, "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1230 (11th Cir. 1999). Thus, the ALJ did not err when he exclusively relied on the VE's testimony without resolving a conflict, if any, between the VE's testimony and the DOT. *See Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007) ("Even assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the [VE]. Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in this Circuit."); *Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 (11th Cir. 2011) ("The ALJ was permitted to base his findings about these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation.").

The assessment of vocational factors is a matter exclusively reserved for the Commissioner, and the ALJ "may rely solely on the VE's testimony" to support his findings, which he properly did here. 20 C.F.R. § 404.1527(d)(2); *Jones*, 190 F.3d at 1230; Tr. 84. Thus, the Court finds substantial evidence supports the ALJ's findings at step five.

V. Conclusion

Upon review of the record, the Court concludes that the ALJ applied the proper legal standards, and the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED:**

1. The decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 29th day of March, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record